IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,            )
                                     )
                    Plaintiff,       )
                                     )
v.                                   )
                                     )            No. 3:18-CR-25-WDC-HBG
RICKY DAVIS,                         )
                                     )
                    Defendants.      )

**REPORT AND RECOMMENDATION**

This case is before the Court on the Defendant's Motion and Memorandum to Dismiss Based on Speedy Trial 18 U.S.C. § 3161 [Doc. 61], which was filed on July 30, 2020, and referred [Doc. 62] to the undersigned on the following day.  *See* 28 U.S.C. § 636(b). Defendant Ricky Davis asks the Court to dismiss the charges against him due to a violation of his statutory and constitutional rights to a speedy trial.  He argues the delay of his trial from the October 29, 2019 setting to March 17, 2020, violates the Speedy Trial Act, because the undersigned United States Magistrate Judge had his suppression motion under advisement for nearly ten months following the filing of post-hearing briefs on December 17, 2018, to the filing of a Report and Recommendation, on October 4, 2019.  The Defendant contends that only thirty days of this time was excludable delay under the Speedy Trial Act.  He also argues that the delay of his trial for over two and one-half years from his March 7, 2018 initial appearance and arraignment violates his Fifth Amendment right to due process and his Sixth Amendment right to a speedy trial.  The Government responds that all continuances in this case were either at the Defendant's request or to further the ends of justice.

After careful review of the evidence, the filings, the parties' arguments, and the relevant law, the Court finds no violation of the Defendant's statutory or constitutional rights to a speedy trial. Although the Court finds that the total length of time that the Defendant has been in pretrial detention is prejudicial, it does not find that the Defendant's lengthy pretrial incarceration violates due process. Accordingly, the undersigned recommends that the motion to dismiss the charges be denied and that the Defendant remain in custody until trial.

I.    PROCEDURAL HISTORY AND FINDINGS OF FACT

The analysis of the Defendant's arguments requires a detailed consideration of the procedural history of this case. On March 6, 2018, the grand jury issued an Indictment [Doc. 3], charging Defendant Davis with conspiracy to distribute methamphetamine and fentanyl from June 1, 2017, through March 6, 2018 (Count One); distribution of methamphetamine and fentanyl on June 15, 2017 (Count Two); distribution of methamphetamine on July 20, 2017 (Count Three); and possession of methamphetamine on February 19, 2018, with intent to distribute (Count Four). The Indictment gives notice of an enhanced penalty for Counts One and Two, based upon the death of C.R., on June 16, 2017, due to overdose of controlled substances allegedly distributed by Defendant. Defendant Davis first appeared on these charges on March 7, 2018. At that time, the Court appointed Assistant Federal Defender Paula R. Voss to represent the Defendant and set the trial for May 8, 2018, before United States District Judge Pamela L. Reeves.[1] Defendant Davis was detained [Doc. 8] pending a detention hearing and detained until trial following his detention hearing on March 22, 2018 [Doc. 13].

**First Continuance.** On April 25, 2018, the undersigned continued the trial to August 14, 2018, upon the Defendant's motion [Doc. 16], to permit time for the Defendant to retain counsel and for new counsel to review the discovery and prepare for trial [Doc. 17]. The Court found

---

[1] Judge Reeves became the Chief District Judge during the pendency of this case.

that a trial continuance furthered the ends of justice and was necessary to give new counsel the reasonable time for effective preparation.  18 U.S.C. § 3161(h)(7)(A) & -(B)(iv).  Thus, the Court found that all time between the filing of the Defendant's motion on April 19, 2018, to the new trial date was fully excludable under the Speedy Trial Act [Doc. 17].

**Second Continuance**.  Attorney Richard L. Gaines was retained by the Defendant's family and substituted as counsel of record on June 15, 2018 [Doc. 21].  On August 2, 2018, the undersigned continued the August 14 trial date to February 26, 2019, upon the Defendant's motion [Doc. 22], to give Mr. Gaines time to complete his review of discovery and to file and litigate a motion to suppress [Doc. 26].  The Court found that a trial continuance furthered the ends of justice and was necessary to give defense counsel the time needed to file and litigate a dispositive motion and to prepare the case for trial.  18 U.S.C. § 3161(h)(1)(D), -(1)(H), -(7)(A) & -(B)(iv).  The Court held that all the time between the filing of the Defendant's motion for a continuance on July 10, 2018, to the new trial date of February 26, 2019, was fully excludable under the Speedy Trial Act [Doc. 26].

**Third Continuance**.  On September 21, 2018, Defendant Davis filed a Motion to Suppress Evidence [Doc. 27], arguing that law enforcement illegally stopped and seized Davis without reasonable suspicion or probable cause, the warrantless search of Davis's parked Cadillac was unconstitutional, and the drug detection dog was not well-trained or reliable.  The Court held an evidentiary hearing on the motion on November 2, 2018.  At the conclusion of the hearing, the Court granted the Defendant's request to file post-hearing briefs and permitted both parties to file post-hearing briefs by December 3, 2018, and responses to post-hearing briefs by December 10, 2018 [Doc. 29].  The Defendant requested and the Court granted two one-week extensions of the deadline for post-hearing briefs [Docs. 34 & 36].  Both parties filed post-

hearing briefs on December 17, 2018 [Docs. 37 & 38]. At this time, the undersigned took the Defendant's suppression motion under advisement.

On January 30, 2019, Defendant Davis filed a third motion to continue the trial, arguing that defense counsel needed additional time for trial preparation [Doc. 40]. The motion states that the Defendant agrees with counsel as to the need for an extension of the trial date and that the Government does not object to a trial continuance [Doc. 40, pp.1-2]. On February 4, 2019, District Judge Reeves continued the trial to October 29, 2019, finding the failure to grant a continuance would deny defense counsel the reasonable time needed to prepare effectively and could result in a miscarriage of justice [Doc. 41]. 18 U.S.C. § 3161(h)(7)(B)(i) & -(iv). Judge Reeves found that a trial continuance furthered the ends of justice and that all time between the filing of the motion to continue and the new trial date was excludable under the Speedy Trial Act [Doc. 41].

**Fourth Continuance.** On October 4, 2019, the undersigned entered a thirty-seven-page Report and Recommendation [Doc. 43], recommending the denial of the Defendant's Motion to Suppress Evidence. On October 16, 2019, Defendant Davis moved to continue the October 29, 2019 trial date, arguing additional time is necessary for defense counsel to prepare the case for trial [Doc. 44]. The Defendant gave two reasons for needing additional time: (1) that the prosecuting attorney would be in trial on another criminal case, *United States v. Hofstetter, et al*, 3:15-CR-27, possibly until the end of January 2020, and (2) that counsel need additional time to complete the litigation of the suppression issue following the filing of the Report and Recommendation on October 4, 2019 [Doc. 44]. The motion also relates the Defendant's agreement with counsel as to the need for a continuance and the Government's lack of objection [Doc. 44]. On October 28, 2019, the undersigned held a hearing on this motion, granted a continuance, and continued the trial to March 17, 2020 [Doc. 48]. The Court found the

4

continuance furthered the ends of justice and was necessary to permit the Defendant to complete the litigation of the suppression motion and to prepare for trial after a ruling on that motion. 18 U.S.C. § 3161(h)(7)(B)(iv). The Court also found that all the time between the filing of the motion to continue and the new trial date of March 17, 2020, to be fully excludable under the Speedy Trial Act [Doc. 48].

**Fifth Continuance.** On December 20, 2019, Chief Judge Reeves denied the Defendant's suppression motion [Doc. 51].[2] The undersigned entered a Pretrial Order on February 6, 2020, stating that litigation of all pretrial motions was complete and the case would proceed to trial on March 17, 2020 [Doc. 52]. However, just over two weeks later, Defendant filed a fifth motion, asking to continue the pretrial conference and March 17 trial date [Doc. 53]. The motion relates that lead counsel for the Government recently completed a three-month trial, that counsel have resumed plea negotiations, that the parties have consulted the United States Probation Office about potential sentences, and that, failing a resolution, the Government may bring a superseding indictment. The motion further states that counsel for Defendant and the Government agree that a thirty- to forty-five-day continuance may give the parties time to resolve the case without a trial. In the motion, the Defendant argues that a continuance is necessary to allow counsel to provide the Defendant with the effective assistance of counsel.

On February 25, 2020, Chief Judge Reeves granted the Defendant's fifth motion for a continuance and continued the trial to June 2, 2020 [Doc. 54].[3] The Court found a trial

---

[2] Defendant requested and received an extension of time to November 18, 2019, to file objections to the Report and Recommendation [Docs. 45 & 46]. In his motion, Defendant requested a thirty-day extension due to "the importance of this issue, the length of the Report and Recommendation, and the complexity of the suppression issues" [Doc. 45, p.1]. Thus, the Defendant acknowledged that the issues raised in his suppression motion were weighty and complex.

[3] The Order finds that "Counsel has explained the right to a speedy trial to defendant, who understands that all time between the filing of the motion and the new trial date will be fully

continuance furthered the ends of justice and was necessary to permit Defendant to resolve pretrial matters and for defense counsel to prepare for trial. *See* 18 U.S.C. § 3161(7)(A)-(B). Thus, Judge Reeves concluded that all time between the filing of the Defendant's motion and the new trial date was fully excludable under the Speedy Trial Act.

**Sixth Continuance**. On May 18, 2020, the Government filed its first motion to continue the trial in this case [Doc. 56]. The motion related that due to the COVID-19 pandemic, the Court has suspended jury trials and grand juries through May 30, 2020. *See* E.D.TN SO-20-12. The Government argued that the parties had engaged in lengthy plea negotiations, following the ruling on the suppression motion.[4] It contended that "[t]he landscape of those negotiations changed significantly following the enactment of the First Step Act" [Doc. 56, p.1].[5] The motion stated that defense counsel's limited access to Defendant Davis, due to the pandemic, has impeded plea negotiations. The Government also stated that it intends to seek additional charges in this case, if negotiations are not fruitful, but cannot do so due to the suspension of the grand jury. The Government also questioned whether jury trials would resume by June 2, which is a few days after the expiration of the Standing Order, which could be renewed. The Government stated that it had discussed the matter of a trial continuance with defense counsel, who stated that the Defendant will not agree to a trial continuance.

---

excludable" [Doc. 54]. However, the Court observes that the motion [Doc. 53] does not state that defense counsel consulted with the Defendant about the continuance. As discussed below, Attorney Gaines testified that he did not recall consulting with Defendant Davis about this motion to continue.

[4] The Government states that plea negotiations in this case were "on hold," until the litigation of the suppression motion was complete on January 7, 2020 [Doc. 56, p.1]. However, as stated above, the District Judge ruled on the suppression motion on December 20, 2019.

[5] The First Step Act was enacted on December 21, 2018. *See* 18 U.S.C. § 3633.

On May 29, 2020, Chief Judge Reeves entered a Standing Order, continuing all civil and criminal jury trials set between June 1 and June 14, 2020. E.D.TN SO-20-13. The Standing Order permitted limited jury trials to resume after June 14, 2020, and stated that grand juries "will convene as directed by the Court." *Id.* at 1. On June 5, 2020, Chief Judge Reeves granted the Government's Motion to Continue and continued the trial to July 21, 2020 [Doc. 57]. The Court found that a continuance was necessary "[d]ue to the Court's reduced ability to obtain an adequate spectrum of jurors and the effect of public health recommendations on the availability of counsel and court staff to be present in the courtroom, and the risk posed to the jurors and the public" [Doc. 57, p.2]. The Court further found that a trial continuance served the ends of justice and was necessary to permit counsel the reasonable time needed to prepare for trial effectively, even considering counsel's acting with due diligence. 18 U.S.C. § 3161(h)(7)(A) & -(B)(iv). The Court excluded all time between the entry of the May 29 Standing Order and the July 21, 2020 trial date.

**Seventh Continuance.** On June 16, 2020, the Grand Jury returned the First Superseding Indictment [Doc. 58], which adds a codefendant Scott Elliot Wardley to Counts One and Two and to the special sentencing factors relating to each of those counts. On July 20, 2020, Chief Judge Reeves continued the trial in this case, without request by the parties, to December 8, 2020 [Doc. 60]. Judge Reeves found a continuance of the July 21 trial date was necessary, because the "circumstances created by COVID-19 have made it impossible to proceed to trial as scheduled" [Doc. 60, p.1]. Chief Judge Reeves concluded that due to the rising numbers of people infected with COVID-19 in the Knoxville community, a trial continuance was necessary to avoid "risk[ing] the health and well-being of the many individuals involved in the trial process" [Doc. 60, p.2]. The Court found the ends of justice served by granting a continuance outweigh the Defendant's and the public's interest in a speedy trial," and it excluded all the time between the

7

July 21, 2020 trial date and the new trial date on December 8, 2020 [Doc. 60, p.2]. Ten days later, Defendant Davis filed the instant Motion and Memorandum to Dismiss Based on Speedy Trial 18 U.S.C. § 3161 [Doc. 61].[6]

The undersigned held a motion hearing on the Motion to Dismiss on November 18, 2020. At that hearing, the Defendant presented the testimony of his former attorney Richard Lee Gaines. Mr. Gaines testified that after receiving the Report and Recommendation on October 4, 2019, he moved to continue the trial, with the Defendant's agreement, in order to file objections to the Report and Recommendation. He stated that a ruling on the suppression motion was very important to the Defendant's case. Mr. Gaines said he and AUSA Stone agreed that Mr. Stone would not seek additional charges until the suppression motion was resolved.

Mr. Gaines testified that a criminal defense attorney has a duty to perform two tasks, often simultaneously: To prepare for trial and to negotiate the best possible plea offer for his or her client's consideration. Mr. Gaines stated that in October 2019, while the parties were

_____

[6] Defendant Davis's Motion to Dismiss was referred [Doc. 62] to the undersigned on July 31, 2020. The Court ordered the Government to respond to the motion on or before August 13, 2020 [Doc. 63]. On August 13, the undersigned arraigned Defendant Davis on the Superseding Indictment and set a motion hearing on the motion to dismiss for September 4, 2020. Also, on August 13, the Government responded [Doc. 65] to the motion to dismiss. The September 4 hearing was continued several times, because Defendant Davis wanted to appear in person but could not be transported, due to a quarantine at the jail. The motion hearing was rescheduled for September 25; however, defense counsel asked to continue that setting, because he was filing a motion to withdraw. On September 28, 2020, Mr. Gaines filed a Motion for Permission to Withdraw [Doc. 72]. The parties appeared for a hearing on this motion on October 1, 2020. The Court found good cause to permit Mr. Gaines to withdraw and substituted Attorney Christopher Rodgers [Doc. 76]. The Court directed Mr. Rodgers to review the motion to dismiss and to contact Chambers to schedule a hearing on the motion. The motion hearing on the motion to dismiss was set for October 27, 2020, and reset with the agreement of counsel to November 18, 2020.

In the meantime, Codefendant Scott Wardley first appeared and was arraigned on September 25, 2020. On October 2, 2020, this case was reassigned to United States District Judge Waverly D. Crenshaw [Doc. 75], after the death of Chief Judge Reeves. Judge Crenshaw granted Defendant Wardley's motion to continue the December 8 trial date [Doc. 81] and scheduled a status conference for December 18, 2020, to set a new trial date.

awaiting a ruling on the suppression motion, AUSA Stone began a lengthy criminal trial in *United States v. Hofstetter, et al*. Chief Judge Reeves ruled on the Defendant's suppression motion on December 20, 2019, while AUSA Stone was in the middle of the *Hofstetter* trial. Mr. Gaines said that in February 2020, he moved for a short continuance of the March 17 trial date to permit time for plea negotiations with Mr. Stone, who had recently concluded the *Hofstetter* trial. Mr. Gaines did not recall whether he consulted Defendant Davis about this motion to continue, but he believed the continuance was in the Defendant's best interest. Ultimately, Defendant Davis rejected the plea offer. Mr. Gaines stated that Defendant Davis never indicated he was willing to accept a plea agreement, but Mr. Gaines believed it was his duty to pursue plea negotiations on behalf of his client. Mr. Gaines said the COVID-19 pandemic "hit" within thirty days of his February 20, 2020 motion to continue. After the February 2020 continuance, Defendant Davis opposed the two subsequent continuances, which were related to COVID-19.

## II.     POSITIONS OF THE PARTIES

Defendant Davis asks the Court to dismiss the charges against him with prejudice, because the delay in bringing him to trial violates both the Speedy Trial Act and his Sixth Amendment right to a speedy trial. He contends that the ten-month period between the filing of post-hearing briefs and the filing of a Report and Recommendation violates the Speedy Trial Act, because only thirty days of this ten-month period is excludable delay. Additionally, he contends that the total delay in bringing this case to trial violates his Sixth Amendment right to a speedy trial. In this regard, he argues that the delay was not his fault but was related to his attorney's pursuit of plea negotiations against his wishes and to the COVID-19 pandemic. Alternatively, the Defendant argues that the Court should reopen the detention hearing, because the length of his pretrial detention violates his right to due process under the Fifth Amendment.

9

The Government responds that all the delay in this case is fully excludable under the Speedy Trial Act and does not offend constitutional due process, because the trial continuances were at the request of the Defendant through counsel. It contends that delay resulting from the COVID-19 pandemic also did not violate the Speedy Trial Act, due to the need to protect the public, potential jurors, witnesses, and court staff from contracting the virus. Additionally, the Government argues that the Defendant's pretrial detention does not violate due process, because none of the delay is the fault of the prosecution and the Defendant's charges are serious. Moreover, pretrial release is not warranted due to the strong evidence of the Defendant's flight risk and danger to the community.

## III.    ANALYSIS

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]" U.S. Const., Amend. VI. Additionally, the Speedy Trial Act requires that a criminal defendant be brought to trial within seventy (70) days of the filing of the indictment or from the date of the defendant's initial appearance. 18 U.S.C. § 3161(c)(1). However, the Speedy Trial Act excludes from the speedy trial calculus certain enumerated periods of delay, such as delay relating to pretrial motions, § 3161(h)(1)(D); up to thirty days during which the court has a motion under advisement, § 3161(h)(1)(H); and delay resulting from a continuance when "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," § 3161(h)(7)(A).

The Court finds that two and one-half years have elapsed between Defendant Davis's initial appearance on March 7, 2018, and the December 8, 2020 trial date, which has also been continued. The Defendant argues this delay in trial violates both his statutory and constitutional rights to a speedy trial. The Defendant also argues that his pretrial detention in excess of two

10

and one-half years violates his right to the due process of law. The Court examines each of these issues in turn.

### A. Speedy Trial Act

Defendant Davis argues that his charges must be dismissed due to a violation of the Speedy Trial Act. He contends that the delay of ten months between the filing of the post-hearing briefs on the suppression issue on December 17, 2018, and the filing of the report and recommendation on October 4, 2019, violates the Act, which only excludes up to thirty days while a court has a motion under advisement. He asserts that eight and one-half months (260 days) of the time during which the Court had the suppression motion under advisement was not excludable and, thus, his charges must be dismissed. Additionally, he argues that the charges against him should be dismissed with prejudice, because although his charges are serious, the lengthy delay in combination with the COVID-19 pandemic leaves the Defendant uncertain as to when he can have a trial.

As stated above, the Speedy Trial Act requires that a criminal defendant be brought to trial within seventy days of indictment or initial appearance. 18 U.S.C. § 3161(c)(1). "If a defendant is not brought to trial within the time limit required by section 3161(c) *as extended by section 3161(h),* the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2) (emphasis added). The defendant bears the burden of proving a violation of the Speedy Trial Act. *Id.* In the instant case, the Court finds the Defendant has failed to carry that burden.

The Defendant is correct that the time during which the undersigned had the suppression motion under advisement exceeded the thirty days that are excludable under § 3161(h)(1)(H). After the November 2, 2018 hearing on the suppression motion, the Court received all supplemental filings by December 17, 2018. From that time, the Speedy Trial act excludes a

11

maximum of thirty days while the Court had the motion under advisement. *See United States v. Mentz*, 840 F.2d 315, 326 (6th Cir. 1988). The Defendant argues that the remaining time until the October 4, 2019 filing of the Report and Recommendation was non-excludable time. The Court agrees that this time was not excludable under § 3161(h)(1)(H). However, that time does not result in a speedy trial violation if it is excludable for another appropriate reason. *See United States v. Fogarty*, F. Supp. 1126, 1128 (E.D. Ky 1989) (holding that the speedy trial time would have resumed after the thirty-day advisement period, "except that there was an intervening motion that had tolled it").

The Act's seventy-day deadline for trial "is not completely inflexible. A district court may, as necessary, stop the Speedy Trial Act 'clock' temporarily by entering an order upon appropriate findings that the 'ends of justice' will be served by the delay and that the ends of justice 'outweigh the best interest of the public and the defendant in a speedy trial.'" *United States v. Moss,* 217 F/3d 426, 433 (6th Cir. 2000) (Gilmore, J., concurring) (quoting 18 U.S.C. § 3161(h)(7)(A)) (reasoning that a court may not make an ends of justice finding after the fact, in order to cure a prior speedy trial violation). In the instant case, the Court finds that all the time between July 10, 2018, and February 26, 2019, and between February 4, 2019, and October 29, 2019, was excluded to further the ends of justice pursuant to § 3161(h)(7)(A)-(B). The excludable time from these continuances encompasses the eight and one-half months that the Defendant raises as objectionable now. Both of these continuances were in response to motions [Docs. 22 & 40] by Defendant Davis, requesting a trial continuance in order to give defense counsel adequate time to prepare for trial.[7] On both occasions, the Court found the trial

---

[7] At the November 18 motion hearing, new counsel for Defendant Davis argued that the Defendant himself did not join in the repeated motions to continue the trial by his prior counsel. However, both motions for a continuance at issue [Docs. 22 & 40] expressly state that the Defendant agrees with counsel's request for a continuance. Moreover, Attorney Gaines testified

continuance furthered the ends of justice and was necessary to give defense counsel the reasonable time necessary to prepare for trial [Docs. 26 & 41]. Thus, the Court finds that the entire period during which the undersigned had the suppression motion under advisement was excluded from the seventy-day speedy trial clock at the Defendant's request. Moreover, after the undersigned issued the Report and Recommendation, the Defendant requested two more trial continuances. This includes the Defendant's request to continue the March 17, 2020 trial date, which fell nearly three months after the District Judge ruled on the suppression motion.

The Defendant compares the instant case to the facts in *United States v. Moss*, in which our appellate court dismissed the indictment with prejudice, due to the district court's failure to rule on a suppression motion during a ten-month period. 217 F.3d at 432. However, in *Moss*, the government conceded and the district court found that the Speedy Trial Act was violated, because more than seventy non-excludable days had accrued. *Id.* at 429 (noting that the government never filed a responsive post-hearing brief and the court never ruled on the suppression motion). Instead, the appellate court focused on the issue of whether the first indictment should have been dismissed with prejudice, rather than without prejudice. *Id.* at 430. Here, the Court does not find that more than seventy non-excludable days have accrued. Instead, the Court finds that the trial of this case has been continued five times upon Defendant Davis's motion, once at the Government's motion, and once upon the Court's own motion.[8] For each of these continuances, the Court found the delay to be excludable under the Speedy Trial Act. Accordingly, the Court finds no speedy trial violation has occurred.

---

that the only continuance motion that he could not recall discussing with the Defendant was the February 21, 2020 motion [Doc. 53].

[8] Following the filing of the Motion to Dismiss, the Court granted an eighth continuance upon Defendant Wardley's motion [Doc. 81].

13

In the event that the District Judge disagrees with the Court's finding that no violation of the Act has occurred, the Court turns briefly to the question of whether the remedy for such violation should be dismissal of the charges against Defendant Davis with or without prejudice. The Act provides that "[i]n determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of justice." 18 U.S.C. § 3162(a)(2); *Moss*, 217 F.3d at 430. First, Defendant Davis concedes [*see* Doc. 61, p.8] that the charges against him are serious. Defendant Davis is charged with conspiring to distribute more than fifty grams of methamphetamine and a detectable amount of fentanyl and with three counts of distribution or possession with intent to distribute controlled substances. "This circuit has categorically labeled drug offenses as serious." *Id.* at 431. Defendant Davis is also charged with a sentencing enhancement for the alleged overdose death of an individual in relation to the conspiracy and one substantive count. The Defendant faces a mandatory minimum sentence of twenty years imprisonment, if convicted. Without question, the first required factor weighs heavily in favor of dismissal without prejudice.

With respect to the facts and circumstances requiring dismissal, the Court acknowledges that it had the suppression issue under advisement for nearly ten months. Moreover, the Court was not awaiting any additional information on the suppression motion from the parties during that time.[9] However, the Court continues to find that the Defendant must also shoulder

---

[9] The Court acknowledges that "general congestion" of its calendar is not a basis for excludable time under the Act. *See* 18 U.S.C. § 3161(h)(7)(C). However, the trial court in *Moss* was faulted for its failure to provide any explanation for failing to rule timely on the suppression motion. 217 F.3d at 434 (Gilman, J., concurring). By way of explanation, the undersigned notes that during the time Defendant Davis's suppression motion was under advisement, the undersigned heard numerous dispositive motions in five other criminal cases and was assigned pending

14

responsibility for the overall delay. As discussed at length above, the Defendant sought five continuances, including the February 20, 2020 continuance in order to engage in plea negotiations two months after the ruling on his suppression motion. The Court finds this factor also supports dismissal without prejudice.

Finally, the Court must consider the impact of a second prosecution on the administration of justice. In addressing this factor, the *Moss* court observed that "the purposes of the [Speedy Trial] Act would be thwarted if courts do not adjust their day-to-day procedures to comply with its requirements," but the court also held that "not all violations of the Speedy Trial Act warrant a dismissal with prejudice[.]" 217 F.3d at 432. In the instant case, the delay in trial, while the undersigned had the Defendant's suppression motion under advisement, has had an impact on Defendant Davis's liberty, because he was incarcerated during that time. However, the Court is not aware of any specific effect on the trial, such as lost witnesses, stemming from the delay. Moreover, the Court finds that the most significant delay in this case stems from the discontinuation of jury trials due to the COVID-19 pandemic. Accordingly, although the impact of the delay on the administration of justice was not negligible, the Court finds that it does not rise to the level to warrant dismissal with prejudice.

In summary, the Court finds first that the Indictment should not be dismissed, because no statutory violation has occurred. However, if the District Judge disagrees with that finding, the Court has evaluated the three required factors from § 3162(a)(2) and the situation created by the COVID-19 pandemic and concludes the Indictment should not be dismissed with prejudice.

---

dispositive motions in criminal cases from the Greeneville division, due to Judge Clifton L. Corker's elevation from Magistrate Judge to District Judge and prior to Magistrate Judge Cynthia Wyrick taking the bench.

15

### B. Constitutional Right to a Speedy Trial

Defendant Davis also argues that the failure to bring him to trial in the two and one-half years since his Indictment and initial appearance violates his Sixth Amendment right to a speedy trial. The Supreme Court has provided a four-factor balancing test to determine whether the constitutional right to a speedy trial has been infringed, requiring courts to weigh the following: (1) the "[l]ength of delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right," and (4) "prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). No single factor is determinative but, instead, all four factors must be considered together, along with other relevant circumstances. *Id.* at 533.

#### (1) Length of Delay

The initial factor, length of delay, serves as a "triggering mechanism" for the court to assess whether to engage the balancing test. *Id.* at 530. "A delay approaching one year is presumptively prejudicial." *United States v. Robinson*, 455 F.3d at 602, 607 (6th Cir. 2006) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)), *cert denied,* 549 U.S. 1239 (2007). In the instant case, the Defendant's trial has been delayed in excess of two and one-half years, since the filing of the Indictment on March 6, 2018. Accordingly, the delay in this case is presumed to be prejudicial.

#### (2) Reason for Delay

The Court next evaluates the reason for the delay in trial. "Governmental delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while neutral reasons such as negligence are weighted less heavily, and valid reasons for a delay weigh in favor of the government." *Robinson*, 455 F.3d at 607. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances

16

must rest with the government rather than with the defendant." *Barker*, 405 U.S. at 531. Defendant Davis assigns the delay in this case to two major reasons, (1) the undersigned's delay in filing the Report and Recommendation and (2) the delay resulting from the COVID-19 pandemic. However, the undersigned finds the bulk of the delay lies at the Defendant's feet, as he requested five trial continuances for reasons ranging from retaining counsel to trial preparation to engaging in plea negotiations. The trial date was repeatedly moved from May 8, 2018, to June 2, 2020, a period of two years and one month, at the Defendant's behest. This delay weighs against finding a speedy trial violation.

The Court finds the remaining delay is related to the COVID-19 pandemic and the addition of a codefendant in the Superseding Indictment. Pursuant to the Court's Standing Orders, jury trials were suspended from March 16 through June 14, 2020. E.D.TN SO-20-06; E.D.TN SO-20-11; E.D.TN SO-20-12; E.D.TN SO-20-13. On November 30, 2020, Chief District Judge Travis R. McDonough again suspended jury trials through January 15, 2021, due to the rising cases of COVID-19 in this district. E.D.TN SO-20-21. The Court finds this delay to be a neutral factor. Additionally, the Government sought a Superseding Indictment on June 16, 2020, once the Grand Jury could again meet. The Superseding Indictment added Codefendant Wardley, who eluded arrest until September 25, 2020 [*see* Doc. 73, Wardley arrest warrant]. Upon his entry into the case, Defendant Wardley was appointed counsel, who needs time to prepare for trial [*see* Docs. 78 & 81]. The delay caused by the addition of a codefendant weighs against the Government but only slightly, because the COVID-19 pandemic prevented the Grand Jury from convening from April 1 to May 30, 2020. *See* E.D.TN SO-20-09 (suspending grand jury proceedings from April 1 through 30, 2020); E.D.TN SO-20-12 (extending suspension of grand jury proceedings through May 30, 2020); E.D.TN SO-20-13

(permitting grand juries to convene as directed by the Court). Finally, the Court observes that Defendant Davis did not and has not moved for severance from Defendant Wardley.

In summary, the Court finds approximately two years of the delay in this case was occasioned by the Defendant and the remaining delay is either neutral or weighs slightly against the Government. Accordingly, the Court finds the reasons for the delay weigh against finding a speedy trial violation.

### (3) Defendant's Assertion of his Speedy Trial Right

The third factor is the defendant's assertion of his right to a speedy trial. The defendant's demand for a speedy trial "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right," but the defendant's "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 531-32. Defendant Davis points to his objection to the Government's May 18, 2020 motion for a trial continuance as his first assertion of his right to a speedy trial [Doc. 61, p.13]. Even considering this objection to the Government's motion to be a demand for a speedy trial, the Court finds that it came more than two years after the inception of this case. Thus, the Court finds this factor is neutral, at best.

### (4) Prejudice to Defendant

Finally, the Court examines the prejudice to Defendant Davis from the failure to bring him to trial in two and one-half years. Prejudice must be evaluated in relation to the interests the right to a speedy trial was designed to protect: (1) the prevention of "oppressive pretrial incarceration," (2) the minimization of the defendant's "anxiety and concern," and (3) the desire to limit the possible impairment of a defense. *Barker*, 407 U.S. at 532. Defendant Davis argues that he has been incarcerated in a county jail, where he is not able to participate rehabilitative programs. He characterizes the jail as a "hotbed for COVID-19" and states that he has been on

18

"lockdown" for an extended time [Doc. 61, p.14]. Additionally, he argues that his extended incarceration has prevented him from working and supporting his daughter, whose welfare has suffered. Defendant also relates that he has suffered anxiety and concern from the uncertainty of his future and from not knowing when he will have a trial. The Court finds that Defendant Davis has been prejudiced by his lengthy incarceration. However, the Defendant has presented no evidence or even argument that the delay in trial has impaired a defense. The Court finds this factor favors dismissal.

Weighing the factors as a whole, the Court finds that Defendant Davis's right to a speedy trial has not been violated by the two and one-half-year delay in trial. The Court finds that over two years of the delay was at the Defendant's request to permit him to retain counsel, for counsel to prepare and litigate the suppression motion, for counsel to engage in plea negotiations, and for counsel to otherwise prepare for trial. The circumstance that the COVID-19 pandemic prevented jury trials at the time when Defendant Davis was ready to assert his right to a speedy trial, although unfortunate, does not mandate the dismissal of the Defendant's charges.

### C. Due Process of Law

Finally, the Defendant argues that his lengthy pretrial incarceration violates his Fifth Amendment right to due process. The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Pretrial detention pursuant to the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, does not offend the Due Process Clause of the Fifth Amendment. *Id.* In so holding, the Supreme Court points to three aspects of the Bail Reform Act, which insure that it serves a regulatory, rather than a punitive, purpose: (1) The Act limits the possibility of detention to persons charged with

19

"the most serious of crimes[,]" to include serious drug offenses; (2) the Act entitles the accused to a prompt detention hearing; and (3) "the maximum length of pretrial detention is limited by the stringent time limitations of the Speedy Trial Act." *Id.* at 747. With regard to this third prong, the Supreme Court expressed "no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." *Id.* at 747 n.4.

"Pretrial detention violates the Fifth Amendment when it amounts to 'punishment of the detainee.'" *United States v. Watson*, 475 F. App'x 598, 601 (6th Cir. 2012) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Whether a term of pretrial detention violates due process must be determined on a "case-by-case basis," *id.*, and there is no bright line beyond which continued detention is automatically a due process violation, *see Salerno*, 481 U.S. at 747 n.4; *United States v. Omar*, 157 F. Supp. 3d 707, 714 (M.D. Tenn. 2016). A due process violation provides a constitutional basis for the Court to reconsider its detention order that is separate from the question of whether a detention hearing may be reopened under the Bail Reform Act.[10] *See Watson*, 475 F. App'x at 601-03 (considering whether the defendant's continued pretrial detention violated the Due Process Clause, even though it held the defendant did not meet the requirements for reopening his detention hearing under the Bail Reform Act). The Court considers four factors "in determining if the pretrial detention is unconstitutionally excessive: (1) the length of the detention; (2) the extent of the prosecution's responsibility for the delay of the trial; (3) the gravity of the charges; and (4) the strength of the evidence upon which the detention

---

[10] At the November 18 motion hearing, the parties referenced this issue in terms of reopening the detention hearing. The Court finds the issue of release based upon a violation of due process is distinct from the statutory remedy of reopening a detention hearing if a defendant is able to show information that was not known at the time of the original detention hearing and that is material to the determination of whether conditions of release exist that will assure the defendant's appearance and the safety of the community. *See* 18 U.S.C. § 3142(f)(2). The Defendant may still seek to reopen the detention hearing, if he can make the appropriate showing.

was based." *Id.* at 601 (6th Cir. 2012); *see also Omar*, 157 F. Supp. 3d at 715 (applying the four factors). The Court examines each of these factors in relation to Defendant Davis.

*(1) Length of Detention*

Defendant Davis was detained at his initial appearance on March 7, 2018 [Doc. 8]. The Court held a detention hearing on March 22, 2018, and found the Defendant's continued detention warranted, because he presented a serious risk of non-appearance and of endangering the safety of another or the community [Doc. 13]. Defendant Davis has been continuously detained since that time, which is a period exceeding two years and nine months. Additionally, the Defendant's trial cannot be reset until at least mid-to-late January under the current Standing Order. *See* E.D.TN SO-20-21. "Congress expressed in the Speedy Trial Act a preference that the trial of incarcerated defendants should begin within ninety days after the start of detention." *United States v. Gonzales Claudio,* 806 F.2d 334, 340 (2d Cir.1986) (citing 18 U.S.C. § 3164(b)). Although Congress has excluded certain types of delay from this ninety-day limit, this three-month period, "representing the considered view of the Congress as to the normal limit on pretrial detention, provides at least a point of reference in [the Court's] consideration of the constitutional limit on such detention." *Gonzales Claudio*, 806 F.2d at 340-41. Defendant Davis has been incarcerated eleven times longer that this ninety-day period. Accordingly, the Court finds the length of detention supports finding a due process violation.

*(2) Prosecution's Responsibility for the Delay*

In cases in which the length of pretrial detention exceeds two years, "'courts have typically upheld detention only if the government was not responsible for any significant portion of the delay and special circumstances indicated that the defendant's release would pose an extraordinary threat to the government's regulatory interests in detention.'" *Omar*, 157 F. Supp. 3d at 716 (quoting *United States v. Cos*, No. CR 05–1619 JB, 2006 WL 4061168, at *6–7

(D.N.M. Nov. 15, 2006)).  With respect to this second factor, the government need not be "at fault" for the Court to deem it responsible for delay.  *Gonzales Claudio*, 806 F.2d at 342.  As discussed above, in assessing a potential Sixth Amendment violation, the Supreme Court has attributed negligent or even neutral reasons for delaying the trial to the government.  *Barker*, 407 U.S. at 531 (concluding the delay from "negligence or overcrowded courts" weighs against the government).  Here, as discussed in part B(2) above, the Court finds little of the delay is attributable to the Government.  Instead, the Court finds the majority of the delay is attributable to the Defendant.

### (3) Serious Nature of the Charges

In the instant case, the Court finds that the serious nature of the charges weighs in favor of the Government's regulatory interest in detention.  As discussed in part A, the Defendant concedes his charges are serious.  The Defendant is charged with conspiring to distribute methamphetamine and fentanyl over a nine-month period, distribution of methamphetamine (two counts) and fentanyl (one count), and possession of methamphetamine with intent to distribute.  The serious nature of these offenses is underscored by a sentencing enhancement for the overdose death of an individual.  Additionally, the Defendant faces a mandatory minimum sentence of twenty years and up to life imprisonment.  The gravity of these charges weighs against the existence of a due process violation.

### (4) Strength of Evidence Favoring Detention

Finally, the Court finds that strong evidence in support of detention was presented at the March 22, 2018 detention hearing.  First, the Court found that the statutory presumption, based upon the probable cause that Defendant Davis committed a drug offense for which the maximum penalty was ten or more years, applies in this case [Doc. 13].  Additionally, the Court found that Defendant Davis failed to rebut that presumption.  The Court found by clear and

convincing evidence that Defendant Davis presents a serious risk of danger to another person or the community, based upon the nature of the offenses, the Government's proffer that one or more deaths are linked to the Defendant's drug sales, his lengthy and serious criminal history that includes multiple felony drug and robbery convictions, and his recent probable drug trafficking and use. The Court also found the Defendant to be a serious risk of non-appearance at trial, based upon his lack of steady employment, his recent drug use and proffered drug addiction, his history of failure to abide by court orders and conditions of release, and the fact that he is facing a potential life sentence. The Court considered proposed conditions of release, including that the Defendant live with his mother and that she serve as his third-party custodian; however, the Court found no condition or combination of conditions would reasonably assure the safety of the community or his appearance at trial. Additionally, the Court finds the evidence in support of the Defendant's dangerousness was bolstered by the testimony at the November 2, 2018 evidentiary hearing, which revealed that Defendant Davis drove on a revoked license on February 19, 2018, and police found controlled substances in two cars belonging to Davis [Doc. 43, pp.18-20]. The Court finds that the strength of the evidence supporting detention weighs against finding a due process violation.

Balancing these four factors, the Court finds no due process violation in this case. Although the length of the Defendant's pretrial detention supports finding a violation, the other three factors tip the balance solidly in the other direction. Thus, the Court finds that the Defendant should be detained until trial.

## IV.    CONCLUSION

After review of the parties' filings and arguments, the procedural history, the evidence presented at the motion hearing, and the relevant law, the Court finds no statutory or constitutional violation of the Defendant's rights to a speedy trial or due process. Accordingly,

the undersigned respectfully **RECOMMENDS** that the Defendant's Motion and Memorandum to Dismiss Based on Speedy Trial 18 U.S.C. § 3161 [Doc. 61] be denied.[11]

Respectfully submitted,

*Bruce Guyton*

United States Magistrate Judge

---

[11]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusory, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).